All right, we're calling the case of Sheba Ethiopian Restaurant v. Dekalb County. Good morning, and may it please the Court. My name is Ben Bryant, and I represent Dekalb County and the remaining individual county officials in this case, Commissioners Gannon Craitor, Marta Marshall-Cox, Fire Inspector Jewett, and Planning Director Andrew Baker. This case arises out of a series of code enforcement actions against Sheba Ethiopian Restaurant, which was operating an unpermitted nightclub in violation of fire codes. Sheba claims that the reason behind my client's actions in this case was racial discrimination. To be clear, my client's a poor racial discrimination, deny that race had anything to do with it, and state that they had lawful considerations for their actions, including protecting public safety from potential fire hazards. That said, I think that this appeal raises several novel and interesting issues of race discrimination law. Yeah, let me ask you to address. Frankly, I'm having a difficult time conceptually understanding the appeal. You are appealing on qualified immunity grounds, or it's an interlocutory appeal based on qualified immunity, but most of your arguments go to just the merits of the claim. So that's one conceptual problem I'm having. Can you just address the way in which your appeal is directed to qualified immunity and not just the merits? Happy to, Your Honor. So qualified immunity applies if the plaintiff's rights under the relevant statutes are not clearly established. And so here we have the legal arguments, of course, that the law governing Sheba's rights under Section 1981 and Section 1985-3 as a corporation, it's not clearly established how these statutes apply to this plaintiff and whether they have any rights under these statutes to begin with. Also, there's a second ground for qualified immunity, and that's based on this Court's well-established mixed motive precedent for qualified immunity, saying that as long as the record shows that the officials had at least one lawful purpose for their actions, then qualified immunity applies. And so it's really a two-pronged qualified immunity argument. On the first one, is that the way we view qualified immunity? I mean, so we just had a qualified immunity appeal about, you know, a student, right? That was what we had just a few minutes ago. And the question was not, is this student the kind of person that has the right that is clearly established? The question is, what is the clearly established right? And here the district court said the clearly established right is not to be discriminated against on the basis of your race, and that's clearly established. And, you know, procedural issues about who can assert that right, that really doesn't go to this clearly established question that's relevant to qualified immunity. What do you say about that? Well, respectfully, Your Honor, I believe your formulation of clearly established law and also the district court's formulation. And how would you formulate it? How would you formulate it? Well, it's not clearly established that corporations have racial identities such that they have rights under Section 1981 or Section 1985.3. But that's not a right, right? Not clearly established that corporations have a racial identity is maybe a procedural question that you have to address or maybe a question of corporate law that you have to address or maybe something that you have to address. But that doesn't seem like you're saying this is the right, right? Well, I think, Your Honor, if we look to take, for example, the Supreme Court's opinion in Ziegler v. Abbasi, in that case, the court determined that qualified immunity was appropriate in the 1985.3 action based on the intra-corporate conspiracy doctrine. Now, the court wasn't asking whether the clearly established, you know, that would, again, be some sort of, under, you know, the way that you presented the question to me, Your Honor, that would seem to fall within your rule that if it's just not clearly established how a particular procedure applies, then it's, you know, the suggestion being that's the wrong qualified immunity. Counsel, is the answer just not in the phrasing? Is it not just you don't have, you have a right to be, there is no right to discriminate based on corporate identity? In other words, let me, I'm having a phrasing problem. But a corporation can discriminate, and there's no right that says they can't discriminate. Isn't that, you don't want to say it that way, but isn't that really what you're saying? Well, I think, Your Honor. Under 1981. Can a corporation be discriminated against? That's right. Does a corporation have a right not to be discriminated against? Thank you. Well, this language, Your Honor, how we define the underlying right at issue is often what these debates are about. This is often what judges struggle with. And the Supreme Court has been very clear that at minimum you have to go to the facts of the case. And you have to. So let me fast forward, because I actually think that it is, it's an odd one, but it falls sufficiently under what we would see as clearly established or not. Why does Webster not clearly establish that exact thing? Well, because Webster is a retaliation case. Why does that matter? I mean, the language in Webster is clear for a few things. Webster says that Section 1981, right after quoting the very statute that applies here, in other words, the language of the statute, the same statute that applies here, in other words, 1981 is one of those where the Supreme Court just said, trust us, there's a retaliation claim embedded in there. So the statute is the same, discrimination, retaliation. There isn't a separate one like there is for other statutes. Right after it cites this very same language, it says, Section 1981 protects people and some entities from racial discrimination during the making of contracts. Well, Your Honor, first the court in Webster specifically said, in situations such as these, it says it right in the opinion, in situations such as these, and in doing so it limited it to the facts of that case. No, it doesn't say that in retaliation cases. It says in situations such as the one presented in this case. In other words, the situation in this case is one of the ones that's presented by the fact that Section 1981's protections extend to companies such as WGT. It would be like reading it the such-as language like you would do would be reading that second such-as to mean we're only talking about WGT and no other corporate entity ever. Or, Your Honor, respectfully, it could be that we're talking about entities that allege retaliation, and in that case it would make sense that the clearly established right then in that case. But even later on in Webster it says that the situations they're talking about are where, quote, where the county in that case or the municipality in that case, quote, declined to make a contract with a party such as WGT on account of race. I mean, that's exactly what we have here. Right, but that wasn't the underlying claim in the case. The underlying claim in the case was retaliation. Why would it matter? Well, because in that case Webster stands for the principle that it's clearly established law that you cannot discriminate against the corporation based on its activity, based on protected activity, based on voicing opposition to an illegal policy. We phrased it broader than that. I mean, in Webster itself we phrased it. You're right that it's a retaliation case. There's no dispute about that. But the court phrased it as there the municipality declining to make a contract with a party such as WGT, there's that such-as language again, such as WGT on account of race. I mean, that's broad. Well, again, the facts of the case do not encompass that particular general statement of law, and especially we do have to keep into consideration that the Supreme Court, you know, has chimed in on this subject. I grant it in dicta, but the Supreme Court has said the corporations have no racial identities and cannot be the direct target of racial discrimination. I'm sorry, you're on. Well, I think that's a good point. I guess this raises the other sort of analytical problem I'm having with this case, which is you conceded standing. So you concede this in your brief. You say, look, they had standing to raise this statutory claim. They are within the zone of interest. That's what the test says. They're within the zone of interest in the statute. How can you concede that a corporation can raise this claim and yet argue that corporations per se cannot raise these claims? That's a good question, Your Honor. So first I would say that, you know, we're talking about prudential standing, and that generally has to do whether the plaintiff has asserted some sort of harm. We don't deny that there was some sort of harm involved here or that they suffered some sort of harm. That's Article III standing. And prudential standing is that they're within the zone of interest covered by the statute, and that's why all this case law, the Fifth Circuit's case, the Seventh Circuit's case, they're all about corporations, corporate forms are within the zone of interest protected by the statute. So if they're within the zone of interest protected by the statute, then it seems very odd to say that they are per se barred from raising the statutory cause of action. Well, we have to look at the what are the, I mean, this is where we're going to the merits of the claim, not standing, one of the elements of a Section 1981 claim and Section 19853 claims is that the plaintiff belong to a protected class or to a racial minority, and so that's where this argument comes in. I'm not denying that they have suffered some sort of harm for standing purposes. I'm saying that they have not, that their rights under those statutes are not clearly established. Yeah, and I take your argument to be that, and just correct me if I'm wrong, but it just seems like you're arguing on this issue that corporations per se cannot have a racial identity. Is that what you're saying? At this point, based on the Supreme Court's statements in Arlington Heights and based on the fact that there is a district court split in this circuit on it, we can't say that the law governing this case is clearly established. So you're not actually saying that you think corporations can't have a racial identity. You're just saying it's not clearly established that they can? Well, I concede that on the issue of whether or not corporations can have a racial identity, that several other jurisdictions have decided that it can, and I, you know, a lot of— But you go further, I mean, to Judge Brasher's question. You're arguing in your brief that there's no violation because corporations cannot have a racial identity. Yes, that is one of the arguments. And that's the only way they get you pen and jurisdiction for the county anyway. I mean, you have to—you don't want us to rule just on clearly established. You want us to get to the violation because that's the only way they get you dependent jurisdiction for the county's claim. I do want you to get to it, but I don't think that's the only way that you get dependent appellate jurisdiction. I think that, you know, the Eighth Circuit's case in White v. McKinney shows that, you know, when two co-conspirators, you know, or when a plaintiff charges two folks with conspiring and only one of them can raise a qualified immunity defense, then the Eighth Circuit exercised dependent appellate jurisdiction even over the other party. So I think that that's another reason. I'm not sure that's consistent with our test. Let me get to the mixed motive thing because this seems to be the—a really confusion with how you want to frame the complaint and how your opposing counsel wants to frame it. And it seemed to me that the district court sided with your opposing counsel. You want to frame it as they went in and they found these things. And even if they went in for racial reasons, they found these things and that makes it legitimate. So that's why you went on FOI and mixed motive. But what the district court said is the key is the targeting. It isn't the going in and what was found there. It's that these folks were targeted and this class was targeted because of racial motivation, irrespective of what happened later on. And for targeting, I don't see where you could find a mixed motive. I'm having trouble understanding or seeing that. Okay. Well, Your Honor, that's a—I appreciate the question. I would say that right off the bat, if we want to look at action by—because there's a—this takes place over the course of time, I think we have to look at the different actions that Sheba is claiming by its various rights. First day they went in. Right. The first day they went in, I'll say that even the complaint itself shows that right around the same time, Fire Inspector Jewett inspected Sheba. Annie inspected a white-owned business for the same thing. And so right there, that undermines any inference. Yeah, but that's not a qualified immunity issue. That's not a FOI issue. That might be they lose on the merits on failure to state a claim, but that doesn't get you to qualified immunity, and that doesn't get you to FOI, which talks about mixed motives. Right. Of course, so then we have—but the whole question is whether or not there was any objectively reasonable rationale for their actions. Of course, investigating code complaints is an objectively reasonable rationale. Trying to protect the public safety— Not if it's done for targeting for racial reasons. Well, I think—well, I think that, you know, both Supreme Court case law and Wood v. Moss and this court's precedent shows that even if one of the motives was improper and one of them was lawful, that that's sufficient for qualified immunity. Thank you, counsel. Thank you. Good morning. May it please the Court. Kerry Wiggins on behalf of SHEBA. The Court has put a finger on one thing we've had trouble with, which is standing versus the merits. I would try to emphasize this in the brief. It is the conduct of the defendants that we are focused on when it comes to qualified immunity. And this Court, about three weeks ago, issued an unpublished decision, Crider v. Williams. That case involved a defax issue out of Alabama. But here's the passage, if I may. In Triad, which is Triad Associates v. Robinson, 1993 case from the Seventh Circuit, the defendant public official sought to argue that he was entitled to qualified immunity because even if he had committed intentional discrimination, it was not clearly established that a white-owned corporation could be a plaintiff in a discrimination lawsuit. The Court disagreed. The appropriate focus in a qualified immunity analysis is the legality of the conduct of the public official, not the obviousness of his liability to the ultimate plaintiff. Counsel, did you cite that as a 28-J letter or anything? No. Do you have a copy of that you can give your opposing counsel so he can take a look at it, please? Absolutely. Thank you. Go ahead, counsel. That's not the case. So, and we do cite to Alameen v. Smith in our brief 2008 case written by Judge Hull, which essentially states the same thing. We're looking at the conduct. We know that it's wrong to discriminate against somebody based on race. 1981 is very clear. Judge Ray put his finger on it when he said that. You know, the idea that— It's not true in the making of context that it's wrong to discriminate against a corporation. Assume that legal principle is correct. I mean, you can't divorce the right from the fact. And your opposing counsel is right. I mean, the Supreme Court says we don't define rights at the abstract because if we did, it'd cover everything. We define it based on the necessary and contingent facts there. It's why we use materially similar cases to define qualified immunity. So, to me, I see this as a qualified immunity issue. I'm only speaking for myself. What I want to know is why your opposing counsel isn't right regarding Webster. And if he is right regarding Webster, how can we possibly find this is clearly established given the dicta in Arlington Heights? Well, okay. I think Webster establishes the right to not discriminate. I mean, that's plain to me. I know the underlying basis of retaliation. The conduct— That seems odd. I mean, it seems odd that we would—it seems odd to hold someone to not discriminate, which is a separate claim from you can't retaliate where someone complains about discrimination. I mean, those are substantively very different things. And I've just never seen us apply a retaliation case where we've set out a right to a discrimination. If you can show me one, that'd be very helpful, where we've said here's the scope of a right for retaliation claims, and we use that to apply the scope of that same right in a discrimination claim. Yeah, I'm not sure I have a case. And I think that to me may be problematic. So put Webster aside. How else could we find it's clearly established without Webster? Well, what I was alluding to earlier, Judge, it's the conduct. You have to look at the conduct. You know, you're asking—I think you're asking can a corporation bring a 1981 claim? I mean, your point, I think, the point that you made earlier was just we don't need a white person to raise a race discrimination claim, an Asian person to raise a race discrimination claim, a Native American person to raise a race discrimination claim, you know, a Martian to raise a— You know, these are not—that's not the clearly established question. It's not, you know, well, this case was about a white person. This case was about a black person. This case was about an Asian person. So it's not clearly established. The way clearly established law works, I think, if I'm understanding you right, is that you look at the conduct of the defendant and whether the defendant knew its conduct was illegal. And if it did, then that's fine. You don't have to do the whole case in your head at the clearly established law point. Right. In El-Amin v. Smith, you know, that was a prisoner case. His mail was being read, and he brought a First Amendment—I think a First Amendment free speech claim, and then he had an access to the court's claim. And, you know, the court—this court was saying it doesn't really— the source of the constitutional claim isn't really controlling in the qualified immunity analysis. It's really the conduct. You knew you were not supposed to open the mail, right? The prison warden knew that you shouldn't open the mail. You know, the constitutional source is not really what's going to govern qualified immunity. It's the conduct. Let me ask you this question about the whole corporate race issue. So on the one hand, I see the defendants arguing that corporations never have a race. Are you arguing that corporations always have a race? Well, we're arguing it does here. Right. Two members. So why does this corporation have a race? And let's—I mean, I think you would probably agree with me that, like, AT&T does not have a race, right? I'm not arguing today that AT&T has a race. Okay, yeah. So why does this corporation have a race even though, as a general matter, we would not expect corporations to have a racial identity? Judge, well, we sort of tracked Hobby Lobby, which was also a closely held corporation, and the identity of the shareholders in Sheba Restaurant are—they're both from Ethiopia. They're both black. It's kind of one of those it looks like a duck walks like a duck a little bit because the clientele, and I understand that the cab takes issue with focusing on the clientele, but, you know, it's predominantly Eastern African-based clientele. If they sold the company tomorrow, the limited liability company, if they sold it tomorrow to me because I wanted to run an Ethiopian restaurant, would the company have my race now or would it still have the race of the prior owners? Well, on the facts of our case, maybe it would have your race. Your race would be an attribute. I mean, we are featuring front and center the race of Mr. Abibi and his partner in the ink. I think it's an ink. You're asking if— So it can change, right? This is what I'm saying about walking like a duck and talking like—the business concept, I mean, it is an Ethiopian restaurant. It has hookah service. Agreed. I would run it exactly the same way. I'd keep the chef, everything. We'd be open at 4 in the morning. We'd have the fireworks, the whole thing. We'd do it exactly the same way. Is it going to carry my race or does it carry the former owner's race? I don't know the answer to that question. Isn't that part of the problem, that we can't answer that question? Because unlike my race, which is immutable to me for whatever reason, and that is who I am, apparently, that's how we identify what race is. That's the whole concept of 1981 is to protect based on race. So if it isn't immutable for a corporation, if it can change based on ownership tomorrow, then how can we say that it is like an individual who has an immutable race? Well, Judd, what I'm saying is here and now, Sheba, the corporation, is a black-owned, black-run, looks— I don't doubt that, and I think you have alleged sufficiently for that, but that's different than the questions that I'm asking, which is can a corporation— why is the Supreme Court not right about, at least in its dicta there, that corporations don't have a race for some of the same reasons I'm talking about? Because especially with regard to stock-owning companies, I mean, those are publicly traded. I mean, AT&T can't possibly have a race. There are millions of shareholders. Right, I understand. And I think, you know, we fall back on this idea that the discrimination statutes, 81, 85, etc., they're to be interpreted broadly. What is a person under the statutes? We can look to the Dictionary Act. We can do these things. And, yes, I suppose, you know, a white corporation that's, you know, doing some other business besides what Sheba's doing could be perceived as a non-minority corporation. But that's fact and tense. Those aren't the facts in this case, obviously. I understand you're posing hypotheticals. I, you know, what are the civil rights statutes designed to cure or to remedy? You know, you mentioned certainly the remedial statutes, and they're meant to protect. But at least in other contexts, I'll give you an example. In defining what the right was, we looked at what the right was at the time that the statute was enacted. In some cases, 1870s. In some cases, 1880s, depending upon which provision we're talking about. And from that, we define the scope of what the right is, that scope of the right that we analyze next to it. How can we not do that with regard to this? And should we be looking to what happened in 1870 and 1880 with the definition of people or person, which is the language used in the statute? Right. I think the statute's adopted in 1866. Okay. Thank you. Well, you know, 1981 was adopted, excuse me, amended in, wait, maybe 91. Congress, well aware of the phrase a person. It was amending Title VII at the same time. The person, though, has stood the same. I mean, that terminology's been the same, right? Well, I think if they believed that a person could be a corporation, they could have clarified that when they were amending it at any time in history. No, I don't think you're asking me. No, that's not the way, you know, for example, Bostick v. Clayton County, that's not the way sex was interpreted, not by the majority of the court. It was just the text. This is what it says. And a person, through these statutes, has always been interpreted to include a corporation. So, you know, it's, what, I beat the guy in the head with a bat, but I didn't know he wasn't a U.S. citizen. I thought it was, you know, some trespasser. I mean, you can't, this behavior that we're trying to curb. Well, I think person covers everybody, even those who are not U.S. citizens. But let's take your example. If I took a bat and started to beat a restaurant, would that be qualified? Would that be covered by 1983? And, again, assume it's a state official or done based on state action. No, I beat a bat on a restaurant. I'm not sure it totally follows the question. You offered the hypothetical, and I'm offering the one that actually applies to this case. It's property damage to property by someone based on what they perceive to be some nature of that corporation. Why is that not covered by 1983? I think it is. You think it would be? For sure. Absolutely. So beating a building would be it? Yeah, that's a seizure, you know, or unlawful search probably. I don't know. But corporations bring 1983 claims all day long. We all know that. But I don't, this case, the mixed use thing, those cases, well, the predominantly employment cases, but they're also largely decided after a record, maybe on summary judgment or even at trial. And I just wanted to reference a couple of cases. But, counsel, they point to the deposition of, not the deposition, sorry, the testimony of I think it's the fire marshal or one of the employees of the fire marshal at the code violation hearing, which has already been found to be part of the judicially noticed record in this case. Let's assume for the moment that it is judicially noticed. Why is that not sufficient to establish a mixed motive here under FOIA? You know, for the reasons we offered in the brief, I don't, it's not a, the ZBA hearing transcript is not a central document. I mean, there's no, I understand it was submitted because we had to brief race judicata on the first round of appeal. I mean, we've already said it's judicially noticed for purposes of establishing the motion to dismiss. Right, but it contradicts the allegations of our complaint, where our complaint contradicts, you know, it's drawn an inference, the county's drawn a favorable inference there. And, you know, this is, I drafted this complaint in 2017. You know, my case is evaporating. I know you know this. My witnesses are leaving, everything. And now I'm trying to, I'm being told to litigate the case on some hearsay statements and a ZBA transcript. That's not central to the complaint. Let me ask you about another set of documents that were filed on the race judicata judicial notice. And that was all the dispositions of all the citations there in the record. And they were never contested. They pled guilty to six of them, right? I think two were dismissed, one was bound over. But that was never contested, what the initial disposition was, correct? That is correct. So there were some valid, the client pled guilty or was found guilty of these covants. I'm not saying that's the end of the story. But if we have a mixed motive case, and if the standard is but for, let's assume that's what it is, but for race, this would have never occurred. I mean, how do you deal with that since your client pled guilty and did, in fact, have these code violations? Yes, Judge. Well, that's hard to deal with at this stage with the complaint. We thought about that as we were drafting the complaint. The client goes in there, I think discovery would show they didn't think any harm would come with paying $75 per ticket or whatever it was. I'm looking at the intent of the defendant here. And we're going to assume that there was a racial connotation intent. 1981 requires intentional discrimination. And so why wouldn't we say this would never have happened but for race? Well, it would have happened, arguably. I don't know what your evidence or your response is to that. Yes, two things, Judge. The first, I think Judge Luck maybe alluded to it or Judge Brasher, the reason they were there in the first place was the racial targeting. To get the citations in the first instance was racial targeting. Benchwarmers, for example, was not getting the same amount, frequency of inspections, certainly didn't lose their licenses or anything like that. But let me just say. But you prevailed and got your license back. You just didn't get your occupancy certificate back. They ultimately, yes, they didn't. They had to reapply. And they got the business license, but it took a couple years. Two things to that, Judge Hall. If you can just conclude. You've answered my question. I just wanted to know if the dispositions were in the record and if you contested that that's what did happen and you said you didn't. I don't know what that means, but that answered my question. Thank you. If you can just conclude. You go ahead. I just want to say Stanley v. City of Dalton and Bovo v. McClure, both cases. One saying that the record has to indisputably establish the lawful motive. On our complaint, that has not happened. We would love the opportunity to explain why they pled guilty to those tickets. Okay. Thank you. Thank you. Your Honors, I'd like to go ahead and jump into something that Mr. Wiggins repeated several times, both in his brief and during our argument, is that qualified immunity is only looking at conduct. And that's just inconsistent with Supreme Court precedent. In Davis v. Scherer, 46A U.S. 183, this was a 1984 case that has been affirmed since then several times, including by Elder. The Supreme Court says, Officials sued for the violations of rights conferred by a statute do not forfeit their immunity by violating some other statute. These officials become liable for damages only to the extent there is a clear violation of the statutory rights that give rise to the cause of action for damages. This is another way of saying, again, that we need to look both at the factual scenario and how it fits and whether that factual scenario constitutes a clear violation of the actual statute. In other words, we treat violations of statutes a little bit differently than we would for a constitutional right. A constitutional right is a little bit sort of amorphous, whereas a statute has specific elements on what has to be shown to violate it or not violate it. Yes, Your Honor. I think that the El-Amin case is a very good example of that because that was dealing with a constitutional right that the Supreme Court hadn't even declared what part of the Constitution that particular right came out of. It was the right to not have your mail read as a prisoner when you're not present. That case has nothing to do with us. It's totally different than this case. Are you saying the question here, the legal question, I'm just trying to think of the best way to put it for your side, not saying I necessarily agree, but does the plaintiff have, the special legal question here is does the plaintiff have a statutory right? Right. Before you get to whether it was violated, you want to say, look, certainly within whether it was violated is whether they even had the right to begin with. And that's the legal question that we need to look to. And for purposes of qualified immunity, you're saying they don't even have a legal right here. That's correct. Much less one that's clearly established. Absolutely, Your Honor. And all of our qualified immunity jurisprudence really comes from Harlow. And Harlow focused on clearly established rights, not just on conduct. As you had mentioned, Judge, it's both. It's A, there first has to be a right and a clearly established right, and then the conduct has to clearly violate it. If you can't even establish a right, then we don't even need to look at the conduct. And even still, the conduct, again, based on the materials that are available. But the problem here is that we've got note, footnote three in the Moore case, and I guess you could say not enough of a discussion to make it binding, but it's pretty much right in point that a corporation, you know, has a right. There was a corporation there. We went to the merits and we said, oh, by the way, they have a right to sue under 1981. So I don't know. Under the Webster case? Yeah, the Webster case. That's what I meant to say. Again, I would say that. . . How do we get around Webster? Well, again. . . I know you got the dictum, but that's an equal protection case. So that's another whole can of worms. Arlington's equal protection. Again, I think, respectfully, Your Honor, I think Webster is pretty easily distinguishable. I think that. . . Well, don't give me retaliation because I don't think that has anything to do with it. Retaliation versus discrimination. How do I distinguish it besides retaliation versus discrimination? Because it makes no sense to me that a corporation has a right to sue somebody for retaliating, but they don't have a right to sue somebody for discrimination. So that makes no sense to me. Because the actual elements of a 1981 race discrimination claim are different than the elements of a retaliation claim, and that is important here because the element of a claim is that under settled 11th Circuit precedent going back to the 80s is that a 1981 race discrimination plaintiff must establish that they are part of a protected class or they have a racial identity. And in this case, based on Arlington Heights and based on the split of authority amongst the district courts in this jurisdiction, of course I'm going to point primarily to Prestige on this, which was affirmed in an unpublished opinion by this court, where the district court in that case said, look, a corporation does not have a racial identity under Arlington Heights. Your point is simply, and we'll conclude with this, I think, that in Webbs, the difference between a retaliation discrimination is a retaliation claim, you don't have to prove a racial identity or being part of a class. That's your point. Thank you for making it so succinctly for me. I now got it. Thank you. And with that, we are adjourned for the day. Thank you so much. All right. Thank you.